THE NEW JERSEY TITLE GUARANTEE AND TRUST COMPANY

*v.*

JOSEPH M. RECTOR and EMILY P. RECTOR.

[Submitted February 8th, 1909. Decided March 27th, 1909.]

1. In the absence of statute, a bailee cannot compel strangers to interplead with each other, where each claims the property in the hands of the bailee under absolute adverse rights, not founded in any privity of title or common contract.

2. The act of May 7th, 1907 (*P. L. 1907 p. 341*), concerning warehouse receipts, and providing that, if more than one person claim the title or possession of the goods, the warehousemen may, either as a defence to an action for non-delivery or an original suit, require the claimants to interplead, applies only to instances in which goods have been stored with warehousemen and warehouse receipts conforming to the act have been issued therefor.

3. A warehouse receipt issued for goods, failing to contain a statement whether the goods received would be delivered to the bearer, or to a specified person, or to a specified person or his order, and also failing to state the rate of storage charges, did not conform to the receipt required by the act of May 7th, 1907 (*P. L. 1907 p. 341*), regulating warehousemen, and was therefore insufficient to authorize the warehousemen to interplead adverse claimants under such act.

4. The penalty imposed by the act of May 7th, 1907 (*P. L. 1907 p. 342 § 2*), regulating the issuance of warehouse receipts, for breach of such section, relates only to negotiable receipts.

On bill of interpleader and demurrer.

The bill filed by complainant corporation alleges that it is engaged in the business of warehousing goods and chattels for hire and seeks a decree to compel two adverse claimants to certain chattels heretofore deposited with complainant for storage to interplead and settle their respective rights to the chattels so deposited. Defendant Joseph M. Rector has demurred to the bill for want of facts to support equitable jurisdiction.

*Mr. Marshall W. Van Winkle,* for the demurrant.

*Messrs. Collins & Corbin,* for the complainant.

LEAMING, V. C.

In the case of *First National Bank of Morristown* v. *Bininger, 26 N. J. Eq. (11 C. E. Gr.) 345,* it was determined that this court cannot, at the instance of a bailee, compel strangers to interplead with each other where the parties claim the property in the hands of the bailee in absolute adverse rights not founded in any privity of title or any common contract. As the present bill of interpleader discloses that the two defendants assert adverse rights, which are in no way connected by title or contract, the decision above referred to must be here regarded as conclusive against complainant's right to compel defendants to interplead, unless the act of our legislature, approved May 7th, 1907, entitled "An act concerning warehouse receipts and to make uniform the law relating thereto" (*P. L. 1907 p. 341*), shall be found to have conferred jurisdiction on this court to entertain the present bill.

Sections 17 and 18 of the act referred to provide:.

"17. If more than one person claim the title or possession of the goods, the warehouseman may, either as a defence to an action brought against him for non-delivery of the goods, or as an original suit, whichever is appropriate, require all known claimants to interplead.

"18. If some one other than the depositor or person claiming under him has a claim to the title or possession of the goods and the warehouseman has information of such claim, the warehouseman shall be excused from liability for refusing to deliver the goods, either to the depositor or person claiming under him or to the adverse claimant, until the warehouseman has had a reasonable time to ascertain the validity of the adverse claim or to bring legal proceedings to compel all claimants to interplead."

The language employed in the sections quoted, when literally construed, clearly confers upon a warehouseman the right to compel adverse claimants to interplead; but it seems manifest that the language there used can only be given the precise force intended by the legislature when it is considered in connection with the general purpose and plan of the act.

The title to the act relates alone to warehouse receipts, and throughout the act its provisions relate to rights, duties and obligations arising from deposits of goods with warehousemen in connection with the issuance of warehouse receipts therefor;

and so far as the act assumes to confer rights or impose duties on warehousemen it would seem to be necessary to treat its provisions as incidental to the existence of warehouse receipts in order that its provisions may be embraced within its title. In this view it seems clear that the language of sections 17 and 18 must be understood as limited to instances in which goods have been stored with warehousemen and warehouse receipts issued therefor.

The bill asserts that complainant is a corporation of this state, "conducting the business of running safe deposit vaults and warehousing valuable goods and chattels for hire," and that defendant Joseph M. Rector deposited with complainant a locked tin box, with contents unknown to complainant, but which the depositor represented to contain silverware, and that complainant received the box to be stored and safely kept, and that complainant delivered to the depositor in the regular course of its business its usual receipt in such cases. A copy of the receipt is set forth in the bill as follows:

"SAFE DEPOSIT VAULTS OF
"THE NEW JERSEY TITLE GUARANTEE & TRUST COMPANY,
"Nos. 83 & 85 Montgomery Street, Jersey City, N. J.
"Certificate of Receipt for Valuables.

"No. 1749.

"Received of Dr. J. M. Rector of Jersey City, N. J., to be placed in one of the storage vaults of the company for safe keeping one (1) package, contents unknown to the company, described and valued by said J. M. Rector as follows, viz.:

"Silverware         $500
Total valuation    Five Hundred        Dollars
on which...................Dollars has been paid for..........
storage up to..................

"Upon re-delivery of the above mentioned package to the depositor the liability of the company will cease without reference to the contents thereof.

"In no event is the company to be liable for a greater sum than the above valuation. No portion of the compensation for storage is to be returned for any cause, and if the property be not removed on or before the ·expiration of the time for which the same is paid, the storage shall stand renewed for another like term, for which a like rate shall be due, and chargeable, payable in advance.

"Jersey City, N. J., August 19, 1908.

                    "SCHAS. SCHLEGEL,
                      "For the Company."

It will be observed that the receipt which was by complainant given to the depositor fails to comply with the statutory requirements touching warehouse receipts. The second section of the act referred to provides that a warehouse receipt must embody within its terms certain specific features there enumerated. Two of the specific requirements are: "A statement whether the goods received will be delivered to the bearer, or to a specified person, or to a specified person or his order," and "The rate of storage charges." Neither of these features is embodied in the terms of the receipt set forth in the bill. Assuming, as I have already assumed, that sections 17 and 18 of the act must be understood to refer only to a warehouseman, who has issued a warehouse receipt, the question then arises whether the receipt so issued must be a statutory receipt; that is, a receipt containing all the features which the statute says must be embodied in the written or printed terms of a warehouse receipt. The present inquiry is not whether all of the beneficial provisions of the act in favor of depositors are intended to apply only to receipts which are issued in strict conformity to the requirements of the act; but is whether one who has received goods for safekeeping and who has issued a receipt for the goods which fails to comply with the requirements of the act can invoke in his own behalf the privileges conferred by sections 17 and 18. I am convinced that until a bailee of goods has issued a warehouse receipt in conformity to the requirements of the second section of the act he has not brought himself within the privilege which the legislature has intended to confer by sections 17 and 18. Any other view would seem in effect to nullify the legitimate force of the provisions of the second section. Some of the requirements of that section may seem of little practical importance, but that feature must be regarded as wholly a matter of legislative concern. However unimportant the requirements may be the legislature has nevertheless imposed the duty upon a warehouseman to embody the specific features named by the statute in all warehouse receipts, and I am unwilling to adopt a rule of construction which assumes that the legislature has intended to confer the special privilege given by sections

17 and 18 upon bailees, who have failed to comply with the primary duty imposed by the second section of the act. If a bailee in possession of chattels for storage seeks, under the claim that he is a warehouseman, to invoke the statutory power of this court to compel adverse claimants of the goods so stored to interplead, I think it incumbent upon such bailee to show that he has pursuant to the act issued a statutory warehouse receipt for the goods so stored. Until this is shown, I do not think that the bailee has brought himself within the spirit of the sections of the act which confer the privilege so sought.

It is urged in behalf of complainant that section 2 of the act contains its own penalty for its breach. The penalty there named relates only to negotiable receipts, and the provision might with some force be urged as an indication of legislative intent that even the beneficial provisions of the act in favor of holders of negotiable receipts may be inapplicable to receipts which do not strictly comply with the statute as to their terms. But without attributing so broad a force to the liability clause referred to, I think it plain that the title and general plan of the act require that sections 17 and 18 shall be understood as conferring the privilege there named only upon bailees who have issued statutory warehouse receipts.

My conclusion is that if a trust company owning safe deposit vaults seeks to be regarded as a warehouseman within the meaning of the act and as such entitled to the privileges conferred by sections 17 and 18, above quoted, it must first issue statutory warehouse receipts for the goods stored in its vaults, and not mere "written acknowledgments" of the nature referred to at the end of section 7 of the act. As I am unable to treat the averments of the bill as sufficient to bring complainant within the spirit of the sections referred to, I am compelled to sustain the demurrer to the bill.