NEW JERSEY TITLE GUARANTEE AND TRUST COMPANY, complainant-appellant,

*v.*

JOSEPH M. RECTOR et al., defendants-respondents.

[Submitted December 2d, 1909. Decided February 28th, 1910.]

Under "An act concerning warehouse receipts and to make uniform the law relating thereto" (*P. L. 1907 p. 341*), a receipt or memorandum given by a warehouseman to his bailor which shows that the property described therein was received from the bailor, by the warehouseman, for safe-keeping, in the ordinary course of his business, is a sufficient warehouseman's receipt to entitle him to require his bailor and an adverse claimant to interplead and settle their respective rights to the property, although it may not embrace all of the terms set out in section 2 of the act.

---

On appeal from an order of the court of chancery advised by Vice-Chancellor Leaming, whose opinion is reported in *75 N. J. Eq. (5 Buch.) 423.*

*Messrs. Collins & Corbin,* for the appellant.

*Mr. Marshall W. Van Winkle,* for the respondents.

The opinion of the court was delivered by

BERGEN, J.

The bill of complaint in this cause sets out that the complainant was engaged in the business of warehousing valuable goods for hire, and that Joseph M. Rector deposited with it a box, for which a receipt was given to the depositor; that subsequently Emily M. Rector, claiming to be the owner, notified the complainant not to deliver the box or its contents to Joseph M. Rector, as it belonged to her, and demanded delivery; that the depositor also demanded delivery to him, and that each claimant threatened to bring a suit against complainant to recover the contents of the box. The prayer is that the claimants be required to interplead concerning the ownership of the property. A general demurrer for want of equity was interposed by Joseph M. Rector, which the vice-chancellor sustained, and to review that conclusion this appeal was taken.

The complainant rests its right to relief upon a statute of this state entitled "An act concerning warehouse receipts and to make uniform the law relating thereto" (*P. L. 1907 p. 341*), section 17 of which provides that if more than one person claim the title or possession of the goods deposited with a warehouseman he may, either as a defence against non-delivery, or in an original suit, require all known claimants to interplead. Section 18 enacts that if someone other than the depositor, or person claiming under him, has a claim to the title or possession of the goods, and the warehouseman had information thereof, he shall be excused from liability for refusing to deliver the goods, either to the depositor or to the adverse claimant, until he has had a reasonable time to ascertain the validity of the adverse claim, or to bring legal proceedings to compel all claimants to interplead. Therefore, if complainant received the goods from the depositor, as a warehouseman, in compliance with the terms of

the act above mentioned, it is entitled, under section 17, to "require all known claimants to interplead," and this the vice-chancellor held, but he sustained the demurrer upon the ground that the receipt issued by complainant to the depositor did not comply with section 2 of the act. So much of the receipt executed by the complainant and delivered to Joseph M. Rector, when the goods were deposited, as is pertinent to the issue raised, reads as follows:

"CERTIFICATE OF RECEIPT FOR VALUABLES.

"No. 1749.

"Received of Dr. J. M. Rector of Jersey City, N. J. to be placed in one of the storage vaults of the Company for safe keeping one (1) Package, contents unknown to the Company, described and valued by said J. M. Rector as follows, viz.:

"Silverware ...................................$500.

"Total valuation Five Hundred Dollars, on which...................

Dollars have been paid for...............storage up to..............

"Upon re-delivery of the above mentioned package to the depositor the liability of the Company will cease without reference to the contents thereof."

The determination of the vice-chancellor, as expressed in his opinion, was "that until a bailee of goods has issued a warehouse receipt in conformity to the requirements of the second section of the act, he has not brought himself within the privilege which the legislature has intended to confer by sections 17 and 18." The specific requirements which the vice-chancellor finds to be absent are, "a statement whether the goods received will be delivered to the bearer or to a specified person or his order," and also "the rate of storage charges."

We think that the clause in the receipt which reads, "upon re-delivery of the above-mentioned package to the depositor, the liability of the company will cease without reference to the contents thereof," justifies the inference that the goods will be delivered to a specified person, that is, to the depositor, for a "re-delivery of the above-mentioned package to the depositor," can only mean that the goods were to be delivered to him, and not to bearer, or to the order of a specified person, the provision in the statute being "a statement whether the goods received will be delivered to the bearer. to a specified person, or to a specified

person or his order." The receipt does not provide for delivery to bearer, or to the order of any specified person, but intends a redelivery of the package to the depositor. Another term to be embraced in the receipt, as set out in section 2, is, "the rate of storage charges," which was not complied with in this case, for the amount of the storage charges was omitted. But according to the view we take of this statute the two matters which seem to have influenced the vice-chancellor are not of importance, for we think that the construction of the statute by the vice-chancellor is too narrow a one, and its application too limited. The statute is of a remedial character, and one of the purposes manifestly intended was the modification of that harsh, and in many · cases inequitable, rule which prevented a warehouseman from calling upon his bailor to interplead when the bailor's title was assailed by an adverse claimant. The section upon which the vice-chancellor relies does set forth what a receipt shall embrace, but in its concluding paragraph declares .that a warehouseman shall be liable to any person injured for all damages caused by the omission, from a *negotiable* receipt, of any of the terms therein enumerated. It does not declare the receipt void, but prescribes a penalty, if, being negotiable, any person is injured because of the omission of any of such terms, and appears to recognize receipts from which some of the terms set out in the act are omitted. If we should adopt the view of the vice-chancellor, a negotiable receipt, even in the hands of a third party, would not be the receipt of a warehouseman, under the act, if a single term was omitted, although the law makes the warehouseman liable on the receipt for all damages resulting from any such omission.

The receipt in this case is not a negotiable one, and it is not pretended that any person has suffered any damage because of the alleged omission of two of the terms named in the act, but the warehouseman in such case is liable under section 7 to any person purchasing a receipt, supposing it to be negotiable, if the warehouseman neglects to mark it "non-negotiable." In each case the terms recited in the act are rather for the benefit of third persons or innocent holders, than the original parties,

and in either case omissions do not destroy the character of the writing as a warehouseman's receipt.

Section 7 of the act, in referring to non-negotiable receipts, imposes upon the warehouseman the duty of plainly placing upon its face the words "not negotiable," if he would escape the same liability to the holder of such a receipt who had purchased it for value, supposing it to be negotiable, as he would have incurred had the receipt been negotiable, and then provides that the section shall not apply to letters, memoranda or written acknowledgments of an informal character, plainly recognizing receipts or written acknowledgments differing from those described in section 2.

We are of opinion that a receipt or memorandum given by a warehouseman to his bailor, which shows that the property described therein was received from the bailor, by the warehouseman, for safe-keeping, in the ordinary course of his business, is a sufficient warehouseman's receipt to entitle him, under the statute, to require his bailor and an adverse claimant to interplead and settle their respective rights to the property, although the receipt may not embrace all of the terms set out in section 2 of the act. This result makes it unnecessary to pass upon the question raised by the appellant here whether, without regard to the act of 1907, the bill can be sustained, and no opinion is expressed on that point.

The suggestion made by the respondent that the complainant is not a warehouseman, is sufficiently answered by reference to the statute and the bill of complaint. Section 58 declares "warehouseman" to mean a person lawfully engaged in the business of storing goods for profit, and the bill of complaint alleges that the complainant is conducting the business of running safe deposit vaults, and warehousing valuable goods and chattels for hire, which sufficiently describes "warehouseman" as defined by the act, and on demurrer the statements contained in the bill of complaint are assumed to be true.

The result is that the order sustaining the demurrer filed by Joseph M. Rector, one of the defendants, should be reversed, with costs, and it is so ordered.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, CONGDON—14.